IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BRIDGETTE IRENE MINTON, et al.,  ) | |
| ) | Civil Action File No. |
| Plaintiffs,  ) | |
| ) | 5:20-CV-00102-TES |
| vs.  ) | |
| ) | |
| WILLIAM BRADLEY, et al.  ) | |
| ) | |
| Defendants.  ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS CORRCARE, INC. AND PAUL BUCZYNSKY, MD'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE OPINIONS OF DEFENSE EXPERT JOHNNY EDWARD BATES**

While Dr. Bates specializes in correctional medicine, he is not qualified to opine on either emergency medicine (causation)[1] or the life expectancy of Mr. Minton (damages). Dr. Bates himself testified that he is not qualified to give his Fifth opinion on emergency medicine and salvageability of Mr. Minton. Further, Dr. Bates' opinion that it is impossible for him to determine when Mr. Minton was salvageable is not helpful to a jury. As to Dr. Bates' Sixth opinion on life expectancy, Dr. Bates only offers a general conclusion that "[t]he use of methamphetamines, especially IV use, has been associated with an increased risk of multiple co-morbidities and a marked decrease in life expectancy" rather than opining on Mr. Minton's life expectancy. This opinion offers nothing more than speculation. Neither of these opinions meet the standard under Fed. R. Civ. P. 702 and should be excluded.

**ARGUMENT & CITATION OF AUTHORITY**

**I.     As To Dr. Bates Fifth Opinion:  Dr. Bates Is Not Qualified To Testify As To Emergency Medicine As It Relates To Mr. Minton's Death And His Opinion Is Not**

---

[1] Defendants' Brief globally addresses causation and damages, broadly, rather than specifically addressing emergency medicine and life expectancy as addressed in Plaintiff's Motion.

1

**Helpful To A Jury And Should Be Excluded.**

**A.     Dr. Bates is not qualified to testify as to survivability of emergency bowel surgery pursuant to Rule 702(a).**

Dr. Bates is not qualified, pursuant to Rule 702(a) to testify as to his Fifth opinion. His opinion states that it is "impossible" for him to opine that Mr. Minton would have survived the emergency bowel surgery he needed. (Doc. 48-8 at 2-3.)  Rule 702(a) states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if … the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed R. Evid. 702(a).  An expert may be qualified to testify due to his knowledge, skill, experience, training, or education. *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008).  Dr. Bates fails to meet this criterion.

Dr. Bates is not qualified to testify as to the survivability of emergency bowel surgery because he is not an emergency room physician. Dr. Bates works in correctional medicine and managing a healthcare service. (Doc. 43-9: Bates Dep. 9:1-4; Doc. 43-8, pp.1, 5.)  He is not Board Certified in Emergency Medicine. (*See* Doc. 46 at 1-2.)  *Allmond v. Akal Sec., Inc.*, No. CIVA 4:05CV96 HL, 2007 WL 988757, at *2 (M.D. Ga. Mar. 29, 2007) ("A witness qualified as an expert in one subject may not offer expert testimony on another subject.") Dr. Bates admits, "I usually don't meet the qualifications…I haven't done that in quite some time, so, you know, I wouldn't qualify as an ER expert anymore."  (Doc. 43-9: Bates Dep. 18:9-17.) It is Dr. Bates's own opinion that he is not qualified to testify as to emergency medicine and his only area of expertise is correctional work. *Id.* The Court should accept his admitted limitations and exclude his Fifth opinion which is testimony regarding emergency medicine and causation as to the death of Mr. Minton. Simply claiming that "Dr. Bates clearly has the requisite knowledge, experience,

training and education to provide a causation opinion as to whether Mr. Minton would have survived under the circumstances of this case to any reasonable degree of medical probability" (Doc. 45 at 7), is not enough to qualify him to opine on the survivability of emergency bowel surgery.

Defendants' reliance on *Callaway v. O'Connell*, 44 F.Supp.3d 1316 (M.D. Ga. 2014) and *Hankla v. Jackson*, 305 Ga. App. 391, 396 (2010) is misplaced. (Doc. 45 at 6.) These cases address standard of care, not causation. *See Callaway* at 1322-27 (the analysis is primarily regarding the legal standard for admitting expert opinion on "the applicable standard of care," and not causation); *see also Hankla* at 397 (discussing application of state law, as it pertained to expert testimony on <u>standard of care</u> but, importantly, switched to cite federal law when regarding expert testimony on <u>causation</u>.)  Defendants cite no cases regarding the admissibility of Dr. Bates on causation.

Dr. Bates does not have the qualifications to offer testimony as to emergency medicine and as to the survivability of Mr. Minton pursuant to Rule 702(a).

### B. Dr. Bates' Fifth opinion is unreliable and unhelpful pursuant to Rule 702(c).

Pursuant to Fed. R. Evid. 702(c), the Court must address whether the testimony offered by an expert is reliable and assists the trier of fact, through the application of his expertise, to understand the evidence or determine a fact in issue. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003).  "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. American Int'l Group*, 521 F.3d 790, 791 (7th Cir. 2008) (citations and quotation omitted).

Dr. Bates Fifth opinion is not helpful to a jury. First and foremost, Dr. Bates opined in his report:

> 5. To a reasonable degree of medical probability, Mr. Minton's death was not caused by any act or omission by Dr. Buczynsky; prior

> to July 27th Mr. Minton had been sent twice to the local emergency department with similar complaints, he had been evaluated by the emergency physician and discharged back to the jail on both occasions, and by the time his condition suddenly worsened enough for anyone to recognize a surgical emergency on the evening of July 27, 2018, **it is impossible to say with any reasonable degree of confidence** that Mr. Minton would have survived the emergency surgery itself.

(Doc. 43-8, pp.2-3) (emphasis added.)

At his deposition, when asked when Mr. Minton was salvageable, Dr. Bates testified "I really don't know." (Doc. 43-9: Bates Dep. 86:24-87:2.) He also testified "I wouldn't say that he was never salvageable." (Id. at 81:14-21.) Illustrating his inability to articulate a clear opinion on the issue, he testified repeatedly that he was unclear on the specifics of Mr. Minton's salvageability:

> Q. All right. So can you say to a reasonable degree of medical certainty when Mr. Minton was no longer salvageable?
> A. From the time of the surgery – let me put it this way: I guess the best way to answer that is from the time that he developed the bowel issue, where he's got a dead bowel and he perforates, **more than likely he was not salvageable at that point. Now, I don't know when that actually occurred.**
> Q. So if we figure today to a reasonable degree of medical certainty, can you pinpoint a date that Mr. Minton was no longer salvageable?
> A. I can't -- the date, no.
> Q. As we sit here today, can you pinpoint -- or strike that. As we sit here today, when Mr. Minton went back to the Baldwin County jail on July 20th, 2018, **was Mr. Minton salvageable**?
> A. Again, **I don't know that**.

(Doc. 43-9: Bates Dep. 88:2-22) (emphasis added.)

> A. **It's anybody's guess as to whether Mr. Minton was salvageable at any point in that period of time** because, like I said, the – he had already been through one major surgery, and the bowel developed severe complications. He develops the dead bowel, he develops the perforation, he develops the peritonitis. I don't know exactly when that occurred. But from whatever time that occurred, from that point on, he was probably not salvageable even if he had

4

surgery because of his underlying conditions.

(Doc. 43-9: Bates Dep. 65:1-11) (emphasis added.)

> Q. So during this time at the Baldwin County jail, is it your opinion that Mr. Minton was never salvageable?
> A. I wouldn't say that he was never salvageable. I would just say that he was in -- toward the end there, certainly by the 28th, I think it would have been very unlikely that he would have survived.
> Q. What about on the 27th? Was he salvageable?
> A. **I don't know** because we –
> MR. POUND: Let me stop and make sure we've got our dates right. If you could give him a reference point for dates.
> BY MS. HUNTER:
> Q. Okay. So you just testified that he was not salvageable on July 27th, 2018. Is that correct?
> A. I believe that was the day before he died. He died on the 28th, right? Yes, I do believe that to be correct.
> Q. And what about on July 26th of 2018, was he salvageable?
> A. **I don't know that.** …..
>
> Q. All right. So I guess let me then ask this question a different way. **Is it your opinion that you don't know if Mr. Minton would have survived abdominal surgery?**
> A. That's –
> Q. **Is that your opinion?**
> A. **That's correct.**

(Doc. 43-9: Bates Dep. 81:14-83:16) (emphasis added.)

> Q. All right. Well, then, let me ask you, what is your opinion, if you plan to offer one, at trial on salvageability?
> A. **I don't think he was salvageable.** It -- for the -- especially the last few days. I don't think he was salvageable. And as to the question, as I have said already about his salvageability, just the fact that he was facing another major surgery, with all his comorbid conditions, and this would have been an extensive surgery, so it would have been difficult for him to have survived it; not impossible, but difficult.
> Q. **What was the last point in time that Mr. Minton was salvageable?**
> A. **I can't say that. I really don't know.**
> Q. Is it your opinion that Mr. Minton was never salvageable?
> A. I wouldn't say he was never salvageable. I mean, you know, we deal in worlds of black and white, but this was a gray area. **And so if you had a scale, I think the scales were certainly stacked**

5

> **against him.   But that doesn't mean that it was entirely impossible. I can't say it's entirely impossible.** I'm just saying the scale was weighed heavily against him.

(Doc. 43-9: Bates Dep. 86:11-87:12) (emphasis added.)

Despite numerous occasions of uncertainty as to when Mr. Minton *was* salvageable, Dr. Bates is contradictorily somehow able to testify when Mr. Minton *was not* salvageable. (Doc. 43-9: Bates Dep. 64:22-65:8, 81:14-21, 86:24-87:2.)  This is not helpful to a jury under the standards of Rule 702(c).

While Defendants have filed an additional affidavit from Dr. Bates, seeking to bolster the reliability of his Fifth opinion, it merely recites the documents Dr. Bates says he relied upon in reaching his opinion, and restates that his opinion is based on "my years of experience in caring for individuals like Mr. Minton with similar medical conditions and similar histories…" (Doc. 46 at 2.) Dr. Bates confirms, in his new affidavit, that his opinion is that it is "impossible for anyone to say to any reasonable degree of medical probability that Mr. Minton would have survived surgery for a perforated bowel if he had been sent to a local emergency department at 9:15 p.m. or even as early as 7:00 p.m. …" (Doc. 46 at 2.) This is not true. Dr. Lutz, a board-certified emergency room doctor testified as to Mr. Minton's salvageability to a reasonable degree of medical certainty. Notably, Defendants have not moved to exclude Plaintiff's expert Dr. Lutz's testimony on Mr. Minton's survivability of the emergency bowel surgery. (See generally Docket.) Yet, there is no methodology to be found upon which the Court could assess the reliability of Dr. Bates' unhelpful opinion that, put simply, it is "impossible" for him to give an opinion, not that it is "impossible" for another expert to render an opinion on Mr. Minton's salvageability.

Dr. Bates Fifth opinion would be confusing to the jury. He is not an emergency room doctor and does not have the requisite qualifications to opine on the issue of Mr. Minton's salvageability

in the emergency room context, and his opinion is conclusory and not helpful to the jury. Therefore, pursuant to Rule 702, Dr. Bates' Fifth opinion should be excluded.

## II.     Dr. Bates Sixth Opinion As To The Life Expectancy Of Mr. Minton Should Be Excluded Because It Is Inadmissible Speculation.

Dr. Bates Sixth Opinion addresses general principals surrounding life expectancies, not the life expectancy of Mr. Minton. Dr. Bates is not qualified to testify as an expert in the area of Mr. Minton's life expectancy. Dr. Bates 'specific opinion' is nothing more than his general ideology that "[t]he use of methamphetamines, especially IV use, has been associated with an increased risk of multiple co-morbidities and a marked decrease in life expectancy." (Doc. 43-8 at 3.) This opinion does not mention Mr. Minton nor does it relate to Mr. Minton.

Dr. Bates was never offered as a damages expert as to Mr. Minton's life expectancy. (See Doc. 43-8.) While Defendants cast Dr. Bates as a "damages" expert opining on Mr. Minton's life expectancy, Dr. Bates himself does not support that argument. (Doc. 43-7 at 5.) Specifically, Dr. Bates testified:

> The subject matter on which I expect to testify includes the **standard of care** ordinarily exercised by physicians and other providers generally in the diagnosis, treatment and management of the medical care of inmates in correctional facilities under circumstances similar to those at the Baldwin county jail during the 2.5 months that William Jeffrey Minton was incarcerated at the facility for May 7, 2018 until his death the night of July 27, 2018. I expect my testimony to focus on the following: the roles and responsibilities of Dr. Paul Buczynsky and CorrCare, Inc. in the medical care of inmates at the Baldwin County Jail generally; the role of Dr. Buczynsky in the medical care of Mr. Minton specifically, beginning May 7, 2018; and the issue of **causation** as I understand it, *i.e.*, whether it is medically probable that any act or omission by Dr. Buczynsky caused Mr. Minton's death on July 27, 2018.

(Doc. 43-8 at 2 (emphasis added).) The issues of damages and the life expectancy of Mr. Minton are nowhere to be found in his report. (Doc. 43-8.)

Dr. Bates testified that all of his opinions were contained within his report:

> Q. And as we look at the report, there are what I would call six bullet points. Do you see those?
> A. Yes.
> Q. And are those your six opinions in this case?
> A. Yes.
> Q. Do you have any other opinions in this case that you have not put in your report?
> A. Not to my knowledge, no.
> Q. Do you expect to come to trial and offer any other opinions that are not contained in this report?
> A. Only unless I receive additional information after this.

(Doc. 43-9: Bates Dep. 11:22-12:11.)

Only now, in an affidavit to salvage what Defendants can, does Dr. Bates offer any life expectancy opinions as to Mr. Minton. Defendants' attempt to recast Dr. Bates as a damages expert opining on Mr. Minton's life expectancy is not permissible pursuant to Fed. R. Civ. P. 26(a)(2)(B). In this affidavit, Dr. Bates admits that his Sixth opinion is based only on his "experience with patients and inmates" where he has provided care (Doc. 50 at 3), not on the specific facts of Mr. Minton's medical history and drug and alcohol history. In fact, Dr. Bates was not supplied with Mr. Minton's drug records until after his Sixth opinion was written. (Doc. 43-9: Bates dep 10:13-23.) When asked if Dr. Bates was offering any opinions other than the six contained in his report, he testified that he was not unless he received additional information. (Id. at 12:7-11.) To date, Defendants have not supplemented their Rule 26 report indicating that Dr. Bates will offer expert testimony as to the life expectancy of Mr. Minton. (See record generally.) Further, Plaintiffs are unaware of any additional information that Dr. Bates has received to support any additional opinions regarding the life expectancy of Mr. Minton.

Defendants present no authority to rebut Plaintiffs' legal argument that the controlling law excludes expert testimony on life expectancy when it is not developed using a discernable

8

methodology. (Doc. 43-1 at 18-19.) Dr. Bates presents no life expectancy tables, no differential diagnosis methodology, no discernable process or source of information for how he reaches his conclusions other than his own "experience."

While Dr. Bates claims Mr. Minton's "life expectancy was significantly shorter than of an average male of the same age" (Doc. 50 at 3), Dr. Bates does not say what the life expectancy of that "average male" is; anything other than a ballpark guess as to what he thinks Mr. Minton's life expectancy was, prior to the systemic infection that ended his life; or, how he anticipated that Mr. Minton, an incarcerated person, would overdose on alcohol or narcotics while he was in jail. At his deposition, Dr. Bates testified that despite having the autopsy of Mr. Minton, he could not opine as to how far along in the process of potential liver failure Mr. Minton was in at the time he died. (Doc. 43-9: Bates Dep. 69:25-70:15.) Rather, Dr. Bates testified his "guesstimate" is predicated on the assumption that "the [hypothetical] continued use of methamphetamine" would "probably lead to him dying at some point." (Doc. 43-9: Bates Dep. 70:1-15.) In other words, Dr. Bates has not used any particular methodology or support of any recognized study or research to offer this speculative opinion as to Mr. Minton's life expectancy as required under Rule 702.

Even now, facing the exclusion of his opinion, Dr. Bates can only state that the reduction in life expectancy is "significant[]" and "dramatically reduced," but not how significant or reduced by how much. Dr. Bates further fails to describe his methodology or provide any supporting evidence by which he arrives at either of these two conclusions.

While Dr. Bates may have "extensive training and experience in… addiction" (Doc. 45 at 2), even assuming *arguendo* those qualifications are enough for him to opine as to life expectancy, he still cannot describe how he arrives at his vague, conclusory opinions. Dr. Bates has offered testimony regarding life expectancy for which he was neither designated nor qualified, which uses

9

no discernable methodology and which is so vague as to be unhelpful to the jury.

Therefore, this Sixth opinion as to Mr. Minton's life expectancy should be excluded pursuant to Rule 702.

## CONCLUSION

Dr. Bates's Fifth and Sixth opinions do not meet the standards imposed by Rule 702 and *Daubert*. Not only does Dr. Bates admit in his deposition that he is not qualified as an expert in the area of emergency medicine, he concedes that his opinions on salvageability and life expectancy cannot be stated to any degree of medical certainty, which is a threshold requirement. As to Dr. Bates' Sixth Opinion, this opinion is a general conclusory statement that again does not meet the standards under Rule 702. Plaintiffs' Motion to Exclude Dr. Bates Fifth and Sixth Opinions should be granted.

Respectfully submitted this 1st day of December 2021.

|  |  |
|---|---|
|  | ISENBERG & HEWITT, P.C. |
|  | */s/ Melvin L Hewitt* |
| 600 Embassy Row, Suite 150 | Melvin L. Hewitt |
| Atlanta GA 30328 | Georgia Bar No. 350319 |
| (770) 351-4400 | Hilary W. Hunter |
| mel@isenberg-hewitt.com | Georgia Bar No. 742696 |
| hilary@isenberg-hewitt.com |  |
|  | BULLMAN LAW GROUP, LLC |
| 600 Embassy Row, Suite 150 | */s/ Mark B. Bullman* |
| Atlanta, GA 30328 | Mark B. Bullman |
| (770) 563-9300 | Georgia Bar No. 094376 |
| mbb@bullmanlawgroup.com |  |
|  | Attorneys for Plaintiffs |